IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

C.P.,

    Plaintiff,

v.                                          CASE NO. 4:03cv65-RH/WCS

LEON COUNTY SCHOOL BOARD,
et al.,

    Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

    This is an action by an emotionally disabled high school student asserting that the defendant school board denied him the free appropriate public education to which he was entitled under the Individuals with Disabilities Education Act ("IDEA"). Plaintiff also seeks relief under other civil rights statutes and the common law. An order has been entered in favor of defendants on the merits of the IDEA claim. (Document 93.) Still pending is the defendants' motion for summary judgment on the remaining claims. I grant the motion.

# I
# Procedural Background

Plaintiff was a student in the public schools operated by the defendant Leon County School Board. The Superintendent of Schools was (and is) defendant William Montford. Plaintiff asserted rights under the IDEA based on emotional disability. Defendants acknowledged plaintiff's entitlement to exceptional student services but did not accede to all of plaintiff's requests. As authorized by the IDEA and Florida law, plaintiff initiated two state administrative proceedings challenging defendants' decisions. State administrative law judges conducted evidentiary hearings on the two petitions, denying relief in both instances.[1]

Plaintiff then filed this action against the School Board and Mr. Montford. Plaintiff's amended complaint alleges claims under the IDEA (based at least primarily on the administrative record); under §504 of the Rehabilitation Act; under the Americans with Disabilities Act ("ADA"); under 42 U.S.C. §1983 (for violation of plaintiff's substantive due process rights); under the Florida Educational Equity Act (the state counterpart to the IDEA); and for common law negligence (educational malpractice and failure to provide adequate

---

[1] The factual background of the case and a summary of the state administrative proceedings are set out at length in the order addressing the IDEA claim on its merits. *See* Opinion on Merits—IDEA Claim (document 93).

accommodations for plaintiff's disability).[2]

A schedule was established requiring the IDEA claim (on which a full administrative record already was before the court) to be addressed first, with the remaining claims to be addressed thereafter. By order entered March 31, 2005, I rejected plaintiff's IDEA claims on the merits and upheld the rulings of the state administrative law judges. Specifically, I concluded that defendants did not violate the IDEA by:

> (1) failing to provide education during the summer of 2002, (2) when plaintiff returned to his high school at the start of the 2002-03 regular school year, failing to provide transportation to an optional classical literature class, (3) using simple forms to notify plaintiff of its refusal to provide services, (4) after plaintiff was arrested for criminal conduct early in that school year, waiting several days before starting instruction at the detention center where plaintiff was held and using teachers at the detention center who were not certified in the subjects they taught, (5) after plaintiff's release from detention, delaying by one day his return to his traditional high school, (6) upon plaintiff's return to that high school, failing to provide him a personal aide or, alternatively, instruction in his own separate classroom, (7) in light of plaintiff's continuing behavioral difficulties, adopting a plan to transfer plaintiff to a nontraditional school for students with emotional or behavioral issues, (8) denying plaintiff's request for placement in an in-patient trauma facility, (9) suspending plaintiff for misconduct without a hearing, (10) continuing plaintiff's education in his traditional high school based on plaintiff's invocation of his right under the Act to block any change in placement pending administrative and judicial review, and (11) continuing plaintiff's

---

[2] Plaintiff also asserted, but now has abandoned, a claim under Article IX of the Florida Constitution.

education when he was arrested and held in jail only after a brief delay during which plaintiff made decisions about his education.

Opinion on Merits—IDEA Claim (document 93).  I concluded that the defendants had not violated the IDEA and that plaintiff had received the free and appropriate education to which he was entitled.

Defendants now have moved for summary judgment on the remaining claims.

## II
## Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In considering defendants' motion, the facts and all reasonable inferences are viewed in the light most favorable to plaintiff as the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Despite plaintiff's argument to the contrary, this standard does not relieve plaintiff from his burden, in opposing defendants' summary judgment motion, of presenting *evidence* to support the essential elements of his claims.  As the Supreme Court has said:

> Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves*, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (emphasis added).  Plaintiff misstates the summary judgment standard by asserting that his allegations suffice to defeat defendants' motion for summary judgment.  *E.g.*, Pl. Resp. (document 102) at 6 (arguing that the "Amended Complaint has all the required allegations to make out claims for Section 504, which must be taken as true"); *id.* at 14 ("The complaint further alleges facts that Defendants' discrimination excluded him from the benefit of an education.  This is enough to overcome a summary judgment motion.").  Unlike on a motion to dismiss, allegations at the summary judgment stage are not enough:  "there must be *evidence* on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis added); *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (noting, "[c]onclusory allegations or evidence setting forth legal conclusions are insufficient to meet the plaintiff's burden" in opposing summary judgment) (citing *Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990)).  In sum, the issue is whether, based on the record now before the court,

defendants are entitled to judgment as a matter of law.³

## III
## ADA & Rehabilitation Act

The Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.*, and the Rehabilitation Act, 29 U.S.C. §701 *et seq.*, prohibit discrimination against persons with disabilities in specified programs or activities. The standards for determining liability under the two statutes are the same. *See* 42 U.S.C. §12133 ("[T]he remedies, procedures, and rights set forth in [§504 of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter [the ADA] provides . . . ."); *Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999) ("The standard for determining liability under the Rehabilitation Act is the same as that under the ADA") (citing *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996)).

Plaintiff's claims under the ADA and Rehabilitation Act arise primarily, if not entirely, from the very same conduct plaintiff says violated his right to a free

---

³ Prior to adjudication of plaintiff's IDEA claims, plaintiff moved to supplement the record. (Document 55.) The motion was denied. Plaintiff now requests reconsideration of that ruling. (See document 102 at 1.) Much of the material proffered with the motion to supplement consisted of legal argument and an expression of personal beliefs and conclusions. Some of the material related to damages or to plaintiff's claim for attorney's fees. None of the material creates a disputed issue of material fact upon which a jury could return a verdict for plaintiff. The ruling set forth in this order would be the same with or without the additional materials.

and appropriate public education under the IDEA.  *See* Amended Compl. ¶¶ 142-46.  Plaintiff's claims are simply IDEA claims dressed in Rehabilitation Act or ADA clothing.  The failure of plaintiff's IDEA claims (as set forth in the earlier order rejecting those claims) also establishes that his ADA and Rehabilitation Act claims fail, at least to the extent that those claims are based on the same conduct.  The Supreme Court and those circuits that have addressed the issue have so ruled.

In addressing the Education of the Handicapped Act (the predecessor to the IDEA), the Supreme Court said:

> There is no suggestion that §504 adds anything to petitioners' substantive right to a free appropriate public education. . . . The only elements added by §504 are the possibility of circumventing EHA administrative procedures and going straight to court with a §504 claim, the possibility of a damages award in cases where no such award is available under the EHA, and attorney's fees. As discussed above, Congress' intent to place on local and state educational agencies the responsibility for determining the most appropriate educational plan for a handicapped child is clear. To the extent §504 otherwise would allow a plaintiff to circumvent that state procedure, we are satisfied that the remedy conflicts with Congress' intent in the EHA.

*Smith v. Robinson*, 468 U.S. 992, 1019-20, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984) (footnotes omitted).  The same analysis is equally applicable under the

IDEA.[4]

Similarly, the Sixth Circuit has said:

> [P]recedent has firmly established that section 504 claims are dismissed when IDEA claims brought on the theory of a denial of free appropriate public education are also dismissed. These holdings make sense in light of section 504's general applicability and its status as an anti-discrimination statute.

*N.L. ex rel. Mrs. C. v. Knox County Sch.*, 315 F.3d 688, 695-96 (6th Cir. 2003) (collecting cases); *see also Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 125-26 (1st Cir. 2003) (dicta) ("[I]f federal policy precludes money damages for IDEA claims, it would be odd for damages to be available under another vehicle, such as §504 or Title II, where the underlying claim is one of violation of IDEA. Several circuits have barred money damages under 42 U.S.C. §1983 for IDEA-based claims for precisely this reason."); *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895 (7th Cir. 1996).[5]

---

[4] Plaintiff suggests *Smith v. Robinson* is no longer good law. But *Smith*'s reasoning is sound, and neither the Supreme Court nor the Eleventh Circuit has cast the slightest doubt on its continued vitality.

[5] To be sure, there may be school-related claims for which §504 provides a remedy when the IDEA does not—but only for conduct not within the scope of the IDEA. *See, e.g.*, *Ortega v. Bibb County Sch. Dist.*, 397 F.3d 1321, 1325 (11th Cir. 2005) (holding that there was no IDEA relief available for student whose school failed to maintain his tracheotomy tube, resulting in the student's death, because "the 'IDEA's primary purpose is to ensure [a free appropriate public education],

As these cases establish, a school district that provides the free appropriate public education to which a disabled student is entitled under the IDEA owes the student no broader free appropriate public education under the Rehabilitation Act or ADA. This principle, standing alone, is a sufficient basis for granting defendants' motion for summary judgment on the Rehabilitation Act and ADA claims in the case at bar, to the extent they mirror plaintiff's IDEA contentions.[6]

To the extent, if any, that plaintiff's Rehabilitation Act and ADA claims might be thought to go beyond the conduct on which his IDEA claims are based, plaintiff's claims fail for lack of proof of any statutory violation. This is so because defendants acknowledged plaintiff's disability and sought in good faith (and correctly, as it turns out) to provide plaintiff the accommodations he needed in order to receive an appropriate education. There is simply no evidence to the contrary. A school district that seeks in good faith to provide an appropriate

---

not to serve as a tort-like mechanism for compensating personal injury,'" and therefore relief for the personal injury tort claim could be sought under ADA, Rehabilitation Act, or other federal statutes) (quoting *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 125 (1st Cir. 2003)) (alterations in original).

[6] One potential IDEA issue was not the subject of the administrative hearings. Plaintiff criticizes defendants' provision of educational services at the jail *after* the administrative hearings. Any IDEA claim on this basis would properly be rejected in this court at this time for failure to exhaust IDEA administrative remedies, unless exhaustion were deemed futile. Plaintiff has failed, in any event, to establish that defendants' actions violated the IDEA or any of the other statutes on which plaintiff now relies.

education for a disabled student does not violate the Rehabilitation Act or ADA, even if (unlike in the case at bar), it turns out the district's educational judgments were incorrect. *See, e.g.*, *Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 529 (4th Cir. 1998) (holding, "either bad faith or gross misjudgment should be shown before a §504 violation can be made out, at least in the context of education of handicapped children"); *E.W. v. Sch. Bd. of Miami-Dade County*, 307 F. Supp. 2d 1363, 1270-71 (S.D. Fla. 2004) (citing *Sellers*, holding that a showing of discrimination under the ADA requires "something more" than "an incorrect evaluation" in the education context).[7]

---

[7] *See also Wood v. Spring Hill Coll.*, 978 F.2d 1214, 1219-20 (11th Cir. 1992) (holding "plaintiffs who proceed under a theory of disparate treatment in section 504 actions must prove intentional discrimination or bad faith in order to recover compensatory damages" and "good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under section 504" but declining to address waived issue of declaratory judgment and other possible relief); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir. 2003) ("[P]rivate individuals may recover compensatory damages under §504 and [the ADA] only for intentional discrimination."); *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the Rehabilitation Act may only recover compensatory damages upon a showing of intentional discrimination."); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999) (holding that recovery under the Rehabilitation Act requires "proof the defendant has intentionally discriminated against the plaintiff"). That compensatory damages are available only upon a showing of intentional discrimination of course does not necessarily preclude other forms of relief based on a lesser showing. In the case at bar, however, plaintiff has shown no violation, intentional or otherwise.

## IV
## Florida Educational Equity Act

The Florida Educational Equity Act, §1000.05, *Florida Statutes*, prohibits disability discrimination in public education.  The Act "is patterned after Title IX and prohibits discrimination based on race, national origin, sex, handicap, or marital status against any student or employee in the state system of public education."  *Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d 1279, 1286 (11th Cir. 2003).[8]  The FEEA expressly renounces any intention "to eliminate the provision of programs designed to meet the needs of . . . students with disabilities . . . ."  Fla. Stat. §1000.05(2)(c).

For the same reasons set forth above with respect to the Rehabilitation Act and ADA, plaintiff has failed to establish that he suffered discrimination based on his disability.  This record reveals no hint of disability discrimination on the part of defendants.[9]

## V

---

[8] Title IX was enacted primarily to counter "pervasive discrimination against women with respect to educational opportunities."  *Cohen v. Brown Univ.*, 101 F.3d 155, 165 (1st Cir. 1996).

[9] A plaintiff must establish at least "deliberate indifference" as a basis for recovery under the Florida Educational Equity Act.  *See Hawkins*, 322 F.3d at 1284.  Nothing in this record would support a finding of deliberate indifference.

## **§1983**

As is settled, §1983 does not itself create substantive rights. It provides, instead, a remedy for the deprivation of rights created by other federal statutes or the Constitution. Plaintiff invokes no statutes other than those addressed above. As addressed above, those statutes were not violated and thus afford no basis for recovery under §1983. Plaintiff asserts a denial of substantive due process, but even if a disabled student has a substantive due process right to educational services at all, any such right most assuredly extends no further than the right to a free appropriate public education as mandated by the IDEA. Plaintiff has not established a deprivation of substantive due process. Having established no violation of any statutory or constitutional right, plaintiff is not entitled to recover under §1983.[10]

---

[10] Even if plaintiff had established a violation of the IDEA, Rehabilitation Act, or ADA, it is far from clear that §1983 would provide a remedy. *See Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1273 (10th Cir. 2000) (allowing §1983 claims based on constitutional violations, but not statutory violations, in IDEA context); *Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 530 (4th Cir. 1998) (same); *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000) (permitting §1983 claims based on violations of IDEA, but precluding recovery of damages on such claims); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 980 F.2d 382, 387 (6th Cir. 1992) (same); *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (permitting §1983 claim based on violation of IDEA); *Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 n.3 (5th Cir. 1990) (same) (dicta); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 753-55 (2d Cir. 1987) (same); *but see Smith v. Robinson*, 468 U.S. 992, 1008-09, 104 S. Ct. 3547, 3467, 82 L. Ed. 2d 746

# VI
# Negligence

Finally, plaintiff asserts a common law negligence claim. The claim is in essence one of educational malpractice, that is, failure to use reasonable care to provide an adequate education. This claim fails because Florida law recognizes no such cause of action. *See, e.g.*, *Fla. Dep't of Health & Rehab. Serv. v. B.J.M.*, 656 So. 2d 906, 914 (Fla. 1995) ("Courts, including those in Florida, have rejected claims of educational malpractice as a tort action for a variety of reasons, one being that it would offend the separation of powers between the three branches of government") (citing *Tubell v. Dade County Pub. Sch.*, 419 So.2d 388 (Fla. 3d DCA 1982)); *Simon v. Celebration Co.*, 883 So. 2d 826 (Fla. 5th DCA 2004) (noting that educational malpractice is "a cause of action not recognized by the

---

(1984) (construing predecessor to IDEA as exclusive remedy for claims that educational services were denied); *Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir. 2003) (refusing to allow §1983 claim based on conduct that was governed by IDEA). The Eleventh Circuit has not decided the issue of whether a violation of the IDEA gives rise to a claim for damages under §1983. *Cf. Weiss v. Sch. Bd.*, 141 F.3d 990 (11th Cir. 1998) (adopting district court opinion that adjudicated merits of IDEA claim, including §1983 equal protection attack on Florida's IDEA-implementing regulations); *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (expressly declining to reach the issue of whether compensatory damages are available under §1983 for violations of the IDEA); *Manecke v. Sch. Bd. of Pinellas County*, 762 F.2d 912 (11th Cir. 1985) (permitting §1983 challenge to school's denial of due process hearing mandated by IDEA).

Florida courts"); *Armstrong v. Data Processing Inst.*, 509 So. 2d 1298, 1299 (Fla. 1st DCA 1987) (affirming dismissal of claim that, although labeled differently, was in effect one for educational malpractice: "[r]egardless of the nomenclature, the gravamen of count III is a cause of action for educational malpractice which is not cognizable in Florida") (citing *Tubell*).[11]

## Conclusion

      Defendants recognized plaintiff as a student in need of exceptional student educational services.  Defendants developed a plan following the procedures and meeting the substantive requirements of the Individuals with Disabilities Education Act.  Plaintiff challenged defendants' decisions in administrative proceedings and lost.  By an earlier order, plaintiff's challenge to the administrative decisions under the IDEA was rejected.  Plaintiff fares no better under the other statutes and common law doctrines he now seeks to invoke.  For these reasons,

    IT IS ORDERED:

    Defendants' motion for summary judgment on non-IDEA issues (document

---

[11] Plaintiff's negligence claim also apparently rests on defendants' alleged statutory violations.  Even if such violations would otherwise give rise to an action for negligence, plaintiff cannot recover on this basis here, because he has established no statutory violations.

*Case No: 4:03cv65-RH/WCS*

97) is GRANTED.  The clerk shall enter judgment stating, "Plaintiff's claims are dismissed with prejudice."  The clerk shall close the file.

SO ORDERED this 27th day of August, 2005.

s/Robert L. Hinkle
Chief United States District Judge
